## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE THE APPLICATION OF          )
MAGNUS NORINDER,                  )
                                  )
       Petitioner,              )
                                  )      NO. 10-CV-391-WDS
v.                                )
                                  )
SHARON FUENTES,                   )
                                  )
       Respondent.              )
                                  )

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

      This matter is before the Court on petitioner's motion for attorney's fees and costs (Doc. 60) to which the respondent has filed a response (Doc. 61) and the petitioner a reply (Doc. 62). In addition, petitioner has filed a supplement to his motion (Doc. 65). Respondent has not filed a response to the supplement.

## BACKGROUND

      After more than six days of trial in this case, the Court entered an Order granting the Petition for Return of Child (Doc. 3) under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("Convention"), T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* (See, Order of Return at Doc. 51 and Memorandum and Order at Doc. 52). The Court determined that JRN, the minor child, was removed from Sweden by the Respondent in violation of the Petitioner's rights of custody (See Doc. 52). Respondent has appealed that

decision, and it is currently pending before the United States Court of Appeals for the Seventh Circuit. *Norinder v. Fuentes*, No. 10-2753.

### A.   PAYMENT OF COSTS AND FEES UNDER THE HAGUE CONVENTION

The payment of attorneys fees to prevailing parties is specifically provided for in the Hague Convention which is incorporated in ICARA, 42 U.S.C. § 11607(b)(3), which provides:

> Any court ordering the return of a child pursuant to an action brought under section 11603 of this title *shall* order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

*Id.* (emphasis added).  The purpose of this section is "to restore the applicant to the financial position he or she would have been in had there been no removal or retention . . . . "  Hague International Child Abduction Convention; Test and Legal Analysis, 51 Fed.Reg. 10494-01, 10511 (Mar. 26, 1986).  Notably, the language of ICARA is mandatory, the prevailing party is entitled to costs, including, inter alia, attorneys fees, and the Court *shall* order those costs and fees paid. § 11607(b)(3).

### 1.   Calculating Attorney's Fees.

Generally, the method used to calculate proper attorney's fees for Hague Convention cases is the lodestar method which is the test used in similar fee-shifting statutes.  *See Wasniewski v. Grzelak-Johannsen*, 549 F.Supp.2d 965, 971 (N.D. Ohio, 2008); *Neves v. Neves*, 637 F.Supp.2d 322, 393-40 (W.D.N.C. 2009); *Distler v. Distler*, 26 F.Supp.2d 723, 727 (D.N.J.1998); *Freier v. Freier*, 985 F.Supp. 710, 712 (E.D.Mich.1997); *Berendsen v. Nichols*, 938 F.Supp. 737, 738 (D.Kan.1996).

The formula applied under the lodestar method is to determine "the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher v. Law Offices of Phil J. Rotche & Assocs.*, 574 F.3d 852, 856 (7th Cir. 2009) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)).

This final determination may be adjusted based on:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Mathur v. Bd. of Trs. of So. Ill. Univ.*, 317 F.3d 738, 742 n. 1 (7th Cir. 2003). Petitioner has requested reimbursement for direct legal fees as well as trial costs totaling $174,435.45. Petitioner has included exhibits supporting these claims.

## B. RESPONDENT'S CHALLENGES TO THE MOTION FOR FEES AND COSTS.

Respondent challenges a number of the charges for which the petitioner seeks reimbursement, including: travel time and costs for petitioner's attorney and paralegal; costs and time of the paralegal at the hearings; petitioner's use of expert witnesses; number of hours petitioner's counsel spent on the case and her billing rate; the lack of specificity in petitioner's counsel's charges; travel costs for petitioner's sister and daughter; the need for a Swedish language interpreter at the hearings; and petitioner's dire financial situation. The Court will address the merits of each assertion in turn.

For purposes of review, the Court has broken down the requested fees and costs by month, and by person.

| MONTH | PERSON/ RATE | NUMBER OF HOURS | CATEGORY (Summary of general activity charged) | TOTAL SOUGHT in $ |
|---|---|---|---|---|
| April, 2010 | Laura Dale $375.00 | .75 | Initial contact/File preparation/ review | 281.25 |
| April, 2010 | Liza Greene/ $350.00 | .25 | File review | 87.50 |
| April, 2010 | Susan Myres/ $400.00 | .50 | Case instructions | 200.00 |
| April, 2010 | Elizabeth Bates (paralegal)/ $125.00 | 2.00 | Email review, research | 250.00 |
| May, 2010 | Laura Dale $375.00 | 43.75 | file preparation/ contact with Central Authority/ coordinate file translation/ client contact | 16,406.25 |
| May, 2010 | Heather Benzenhoefer/ $175.00 | 10 | file prep/ email review/response | 1,750.00 |
| May, 2010 | Heather Benzenhoefer time not charged | 4.00 | | 0.00 |
| May, 2010 | Liza Greene $350.00 | .50 | Email review from client/ legal team | 175.00 |
| May, 2010 | Liza Greene | 6.25 | | 0.00 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | time not charged |  |  |  |
| May, 2010 | Elizabeth Bates $125.00 | 16.25 | File preparation/ email review and response | 2,031.25 |
| May, 2010 | Elizabeth Bates time not charged | 5.75 |  | 0.00 |
| June, 2010 | Laura Dale $375.00 | 136.00 | Trial prep/trial and travel time/ client meeting/ witness review/ brief preparation and review | 51,000 |
| June, 2010 | Denise Khoury $200.00 | .25 | Research | 50.00 |
| June, 2010 | Heather Benzenhoefer $175.00 | 1.25 | Review of client emails/ meet with L.Dale | 218.75 |
| June, 2010 | Heather Benzenhoefer time not charged | 1.00 |  | 0.00 |
| June, 2010 | Liza Greene $350.00 | 2.25 | Conferences with L.Dale Instructions to E. Bates re expert witnesses and client questions | 787.50 |
| June, 2010 | Liza Greene time not charged | 1.25 | Client e-mail review and staff e-mail review | 0.00 |
| June, 2010 | Susan Myres $400.00 | 1.50 | Amendments to trial brief/conference | 600.00 |
| June, 2010 | Elizabeth Bates | 124.50 | Trial preparation/ | 15, 562.50 |

|  | 125.00 |  | attend trial/ review of e-mails/client |  |
|---|---|---|---|---|
| June, 2010 | Elizabeth Bates time not charged | 2.25 |  | 0.00 |
| July, 2010 | Laura Dale | 47.25 | File preparation/final hearing/travel | 17,718.75 |
| July, 2010 | Elizabeth Bates | 48.25 | File preparation/ final hearing | 6, 031.25 |
| July, 2010 | Liza Greene | 1.00 | Conf with L. Dale re emergency motion for stay post hearing | 350.00 |

| COSTS | PERSON | AMOUNT |
|---|---|---|
| Travel to/from United States in June, 2010 | Petitioner & Daughter, Rebecca | 3,539.00 |
| Travel to/from United States June, 2010 | Petitioner's sister | 2,504.47 |
| Travel to/from United States July, 2010 | Petitioner and Daughter, Rebecca | 4,078.87 |
| Travel to Sweden July, 2010 | Minor Child (After order of return) | 3,257.572 |
| Hotel Costs June 20-July 1, 2010 | Petitioner | 3,873.09 |
| Hotel Costs June20-24 | Rebecca | 1,166.50 |
| Hotel Costs July 20-22 | Petitioner | 661.95 |
| Hotel Costs (Amsterdam) | Petitioner/child | 128.12 |
| Taxi costs to/from airport-Sweden | Petitioner | 164.40 |

6

| Taxi- Amsterdam | Petitioner and minor child | 83.20 |
| Translation fees – foreign documents | for Hague Convention filings | 13,785.87 |
| Interpreter fees & travel June, 2010 | June Hearing (interpreter used) | 3,786.90 |
| Interpreter fees & travel July, 2010 | July hearing (interpreter present but not used) | 4,763.00 |
| Expert fees | Sweger–preparation and live testimony | 5,338.30 |
| Expert fees | Österberg–pretrial assistance with Swedish law | 9,501.07 |
| Private Investigator | Surveillance, investigation, May, 2010 | 735.43 |
| Dr. Verkander | Expert Fee (note, no documentation provided) | 5,838.00 |
| | | |
| **OTHER COSTS** | **MONTH** | **AMOUNT** |
| Copying/initiation fees | April, 2010 | 87.83 |
| Copying/research costs | May, 2010 | 90.83 |
| Copying/research costs | June, 2010 | 1,105.38 |
| Travel/lodging/business services (hotel)/copying | July, 2010 | 14,341.47 |

### 1. Travel Time for Petitioner's Attorney and Her Paralegal.

The respondent states that the amount sought by petitioner's counsel for her travel and for that of her paralegal, totaling $26,234.94,  is an unreasonable charge and that the petitioner's attorney should have hired local counsel and thereby reduced costs.  Petitioner and her paralegal charged approximately thirty six hours for travel time between Houston and St. Louis. Respondent seeks to have the Court exclude approximately $18,000 for travel related costs.

Ironically, Respondent's counsel is not from this local legal community either, but is an attorney with his offices in Chicago, Illinois.   The travel time for Petitioner's counsel was billed at the same rate as trial preparation and trial time.

Respondent also claims that Petitioner's counsel should not have had her paralegal travel with her to the hearings in this District, also saving costs.  It is a common practice to use a paralegal to assist a lead counsel with the performance of pretrial and trial assistance tasks and administrative tasks, such as contacting and coordinating witnesses, organizing exhibits, and otherwise assisting in trial preparation.  The use of a paralegal is a common method of cost savings for clients. In the Seventh Circuit, separate billing rates for paralegals is well recognized. *See, Spanish Action Committee of Chicago v. City of Chicago,* 811 F.2d 1129, 1138 (7th Cir. 1983).  As the Supreme Court noted in  *Missouri v. Jenkins,* 491 U.S. 274, 286 (1989):

> All else being equal, the hourly fee charged by an attorney whose rates include paralegal work in her hourly fee, or who bills separately for the work of paralegals at cost, will be higher than the hourly fee charged by an attorney competing in the same market who bills separately for the work of paralegals at "market rates."

 With respect to travel time for both Petitioner's counsel and her paralegal, "the exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel…."  *Gruber v. Sec'y of Health & Human Servs*., 91 Fed.Cl. 773, 789 (2010) (*quoting Johnson v. Univ. Coll. of Univ. of Ala. In Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983).  An action brought under ICARA is a particular type of case, where the services of an attorney skilled in the subject matter is critical.  Laura Dale, trial counsel for the Petitioner, states in her affidavit that more than one third of her practice involves multi-jurisdictional conflicts, including Hague Convention and ICARA cases. (Ex H, Doc. 60)

Moreover, the evidence revealed that the Respondent came to the Southern District of Illinois in an unusual manner.  Initially, after arriving in the United States from Sweden with the minor child, she took him to the South Texas area, where she had previously resided, and where she had some friends and family ties. This is also the area of the country where Petitioner's counsel is located.  Shortly thereafter, Respondent moved herself and the minor child, J.R.,  to the Southern District of Illinois despite having no family ties here, no job in this area, no residence in the area (she lived with various "friends" during the time in question) and no clear connections to the area.  She testified that she had a "friend of a friend" in the area (who happens to be a local attorney – but who did not enter his appearance in this case).  Respondent would have the Court find that once it was determined that Respondent had been located in this District, Ms. Dale, who by that time had been in the case for more than a month, should have turned over the case to local counsel.  The Court is not persuaded by this argument.  It was reasonable, given Petitioner's counsel's familiarity with this case, and the type of action, and the fact that Respondent chose to come to this District, to expect counsel to continue to represent the Petitioner in this case.

Under Seventh Circuit law, travel expenses for out of town counsel are not, per se, excludable.  "[R]easonable attorneys' fees presumptively include reasonable travel time billed at the same hourly rate as the lawyer's normal working time."  *Sweet v. Corp. Receivables, Inc.*, No. 05-CV-0779, 2008 WL 29535372 (E.D.Wis. July 29, 2008) (*citing Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984)).

Upon review of the record, the Court rejects Respondent's claim that Petitioner should not be reimbursed for travel time for the paralegal in this case.  Further, the Court will allow

9

reasonable travel costs, billed at the approved rates, for both Petitioner's counsel and her paralegal for the hearings in this case. The Court therefore **OVERRULES** Respondent's objections to Petitioner's Counsel's and her paralegal's travel time but will review those times for reasonableness.

### 2. The Paralegal's Time at the Hearings.

Respondent further claims that the amount of time spent by the Petitioner's counsel's paralegal on this case was excessive. "The relevant inquiry for requested paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (internal quotation omitted). *See also Freier v. Freier*, 985 F.Supp. 710, 712 (E.D.Mich. 1997) (holding that paralegal fees are recoverable in Hague Convention cases, but not where the work is "ministerial and incidental to the preparation of the case."). Given the complexity of this case, coupled with the expeditious nature of the proceeding, the Court **FINDS** that it was reasonable to use the services of the paralegal, and for her to travel with Petitioner's counsel. Respondent's objection on this ground is, therefore, **OVERRULED.**

### 3. The Expert Witnesses.

The Respondent objects to the Petitioner's request for reimbursement of $13,279 for the use of the two experts, Ms. Österberg and Ms. Ia Sweger. Respondent characterizes their utility to this case as low, asserting that the Petitioner could have established the same information by introducing the translations of Swedish law without the input or testimony of the lawyers.

The Hague Convention requires that the petitioner establish certain elements in order to be entitled to review in international child custody cases.  There are several critical provisions of the Hague Convention which the Court found applied to this case:

Article 3:    The removal or the retention of the child is to be considered wrongful where-
a.    it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and,
b.    at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
. . .

Article 5:    For the Purposes of this Convention-
a.    "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b.    "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.
. . .

Article 12:    Where a child has been wrongfully removed or retained in terms of Article 3 . . .the authority concerned shall order the return of the child forthwith.

Treaty Doc. No. 99-11.

"In ascertaining whether there has been a wrongful removal or retention of a child within the meaning of Article 3, Article 14 empowers the court of the requested State to take notice directly of the law and decisions in the State of the child's habitual residence."  Hague Convention, Art. 14, 51 F.R. 10494-01.  This permissive view of admissibility of foreign law was incorporated in the ICARA statute, 42 U.S.C. § 11605, "With respect to any application… under section 11603… no authentication of such application, petition, document or information shall be required… to be admissible in court."  Therefore, "[a] court asked to recognize or

11

enforce the judgment of a foreign court must satisfy itself of the essential fairness of the judicial system under which the judgment was rendered." *Navani v. Shahani*, 496 F.3d 1121, 1131 (10th Cir. 2007) (*quoting* Restatement Third of the Foreign Relations Law of the United States § 482 cmt. b (1987)).

Notably, the Respondent, in her pleadings and in the positions she asserted during the trial, challenged the habitual residence of the minor child, asserting that it was not Sweden because they had moved there for a "few years," intending to return to the United States.  She also claimed that Petitioner did not exercise his parental rights of custody over the minor child, and further asserted that he did not have a right to custody of the child. Therefore, the Respondent put each of these elements relative to Petitioner's burden of proof into issue by taking an adversarial position. Consequently, Petitioner was justified in seeking and using the experts to meet his burden to establish the Swedish law standards on these issues.  Petitioner was required to introduce a large number of documents (which were translated from Swedish into English) to establish some of the elements required under the Hague Convention.

Moreover, the Court relied in large measure on the testimony of Petitioner's expert, Ms. Sweger, (who testified via teleconferencing from Sweden) to make its finding that under Swedish law, the residence of the parties and the minor child was Sweden; that the Respondent retained the minor child in the United States in breach of Petitioner's custody rights; and that, under Swedish law, Petitioner had been regularly exercising his rights to custody of the minor child.

Petitioner's counsel has represented to the Court that Ms. Österberg assisted in the gathering of documents necessary to prosecute the case, including the Hague Application, and

translated witness statements, reports and legal documents from the Swedish courts.  Petitioner's counsel also argues that the fees and costs sought do not include other legal expenses incurred by Petitioner in attempts to settle the case without trial, or other costs related to matters pending in other courts. The Court **FINDS** that the use of Ms. Österberg was reasonable and necessary in this case.  Accordingly, the Respondent's objections to the use of the experts  Ms. Österberg and Ms. Sweger, is **OVERRULED.**

Finally, Respondent asserts that she should not be charged for the costs of Dr. Verkander because there is no documentation offered.  The Court has reviewed the record, and agrees that without documentation, Dr. Verkander's costs are not recoverable, and they will not be allowed. Respondent's objection on this particular basis is **SUSTAINED.**

Therefore, the Court **OVERRULES IN PART AND SUSTAINS IN PART** Respondent's objections to the use of expert witnesses, and the costs related to that use.

## 4. Number of Hours Spent on Case.

Respondent asserts that the amount of time spent by Petitioner's attorney was unreasonable.  Respondent's counsel contrasts his time spent on this case, which was 130 hours total, billed at a rate of $200.00 per hour, excluding travel time.  Given that this type of case is one where time is critical, as it is similar to an injunction hearing, the Court certainly cannot fault Petitioner's counsel for her preparation.  Moreover, the proper inquiry is not how many hours the opposing counsel spent on the case,  but "whether the requested fees and costs were 'necessary' to secure the [child]'s return." *Aldinger v. Segler*, 157 Fed. Appx. 317, 318 (1st Cir. 2005).  *See also Berendsen v. Nichols*, 938 F.Supp. 737, 738 (D. Kan. 1996) (the proper amount of hours was the "amount of hours [] necessary to petitioner's representation….").

In general, when looking at attorney's fees, the "reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional." *Trustees of Chicago Plastering Inst. Pension Trust v. Cook Plastering Co.*, 570 F.3d 890, 905 (7th Cir. 2009) (*See, e.g., Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs,* 553 F.3d 487, 490 (7th Cir.2009) (citing *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir.1999)); *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir.2007)).

Further, "[t]he reasonableness of the time expended by an attorney on behalf of a client depends not only on the total number of hours involved but also on the particular tasks to which the attorney devoted . . .her time." 570 F.3d at 905; *See, e.g., A. Bauer Mech., Inc. v. Jt. Arbitration Bd. of Plumbing Contractors' Ass'n*, 562 F.3d 784, 793 (7th Cir.2009); *Lightfoot v. Walker*, 826 F.2d 516, 520-23 (7th Cir.1987).

"It is not at all unusual for a court to determine that some aspects of an attorney's work were not fruitful, were unnecessary, or merited less time than the attorney devoted to them, and to deny compensation for those portions of the attorney's work." 570 F.3d at 905; *JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342-43 (7th Cir.2007).

Frankly, Respondent's efforts in what she referred to as her "chess game" when she took the minor child from Sweden to the United States, including first taking him to Texas, then refusing to let Petitioner know of her or the child's whereabouts, and eventually moving the child to this District, were largely responsible for and greatly increased the amount of hours necessary. Petitioner's counsel was reasonably required to expend time and costs locating the Respondent and the minor child, to then have Respondent served, and to prepare the case for

14

filing.  The expenses related to those additional efforts are rightfully assessed against the Respondent.

In this case, as in all Hague Convention cases, the Petitioner bore the burden of establishing a right to return the Minor Child to his home in Sweden.  The Court notes that Petitioner's counsel was not only very well prepared, but presented a well organized, to-the-point case.  To the extent that there was any excess in the proof offered by Petitioner, that excess was driven, in large part, by Respondent's counter-claims and assertions.  The Court cannot find that Petitioner's counsel spent an extraordinary amount of time preparing for this case.

However, the Court has noted some overlap, particularly between the billing by the paralegal and counsel with respect to review/responses to e-mails from the Petitioner, experts, the Court, etc.  In light of that overlap, it is appropriate to reduce the time expended by a reasonable percentage to reflect that duplication. Therefore, Respondent's objection is **OVERRULED IN PART AND SUSTAINED IN PART.** The Court will reduce the fees of Ms. Dale by an overall rate of 20% (and those of her paralegal as well by the same percentage) to reduce redundancy in billing.

### 5. Petitioner's Counsel's Billing Rate.

Respondent asserts that Petitioner's counsel's billing rate of $375 per hour is unreasonable, noting that counsel for Respondent is charging only $200.00 per hour.  The Petitioner has the burden of showing that the fee counsel seeks is proper and "in line with those prevailing in the community for similar services  by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable,

and is referred to – for convenience – as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11(1984).

The Seventh Circuit has stated its "preference ... to compensate attorneys for the amount that they would have earned from paying clients, i.e., the standard hourly rate." *Mathur v. Board of Trustees of So. Il. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (citation omitted). However, where out-of-town counsel's rate exceeds that of local practitioners "an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir.2000). The Court will assume that evidence of the "attorney's actual billing rate for comparable work" will constitute the going market rate in the Houston area. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir.1999) (*citing People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996)). When such evidence is not offered or not available (i.e., if the attorney typically accepts clients on a contingency fee basis), the "next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* If the moving party meets his burden of showing that the rates his counsel charged were "reasonable," the burden then shifts to the opposing party to show why a lesser hourly rate should be applied instead. *Id*. at 554-55. Petitioner has not provided any direct evidence of prevailing rates for services in *this* District.

However, the Court is aware that in this District the prevailing market rate is approximately $250-$300.00 per hour as a reasonable rate. The Court will, therefore, adjust the fees sought by the Petitioner to a rate of $300.00 per hour, and those fees allowed will be

16

adjusted  accordingly.  Respondent's objection is therefore, **OVERRULED IN PART AND SUSTAINED IN PART** and the Court will award fees to Ms. Dale, and other senior counsel in her firm,  at the rate of $300.00 per hour.

### 6.  Billing with Sufficient Specificity.

Respondent asserts that "In requesting, challenging, and granting attorneys' fees, specificity is critical.  A request for fees must be accompanied by 'fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys.'"  *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) (*quoting Evans v. Port Auth.*, 273 F.3d 346, 31 (3d Cir. 2001).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  Here, the Court **FINDS** that the billing records provided by the Petitioner's counsel are sufficiently specific to allow meaningful review, and this objection is **OVERRULED**.

The Court does note, however, that there is some redundancy between the Petitioner's counsel's billed time and that of her paralegal. Therefore, the Court has determined that a reduction of 20% of billed time for both Ms. Dale and Ms. Bates is appropriate to reduce unnecessary overlap in work, and therefore, billed costs.

### 7. Travel Expenses for Petitioner's Daughter and Sister.

The travel expenses of witnesses have been found to be reimbursable as legal costs in other contexts. *See Majeske v. City of Chicago*, 218 F.3d 816, 825-826 (7th Cir. 2000).  *See also* 28 U.S.C. § 1821.  This has included witnesses who never testified in court.  "Fees paid to a witness who was subpoenaed but did not actually attend the trial may be allowed as costs 'when

17

it was reasonably expected that his attendance would be necessary and he had held himself in readiness to attend." *Spanish Action Committee,* 811 F.2d at 1138 (*quoting* 6 Moore's Federal Practice ¶ 54.77[5.1], at 54-537).

In this case, the Court **FINDS** that although she did not testify at the hearing, the presence of the Petitioner's sister was warranted and reasonable.  Respondent had raised the issue of the Petitioner's fitness to parent, alleging excessive drug and alcohol use and abuse. Included in Respondent's pleadings were claims that Petitioner's sister had knowledge of this abuse and had asked for Respondent's intervention to aide him.  Although Petitioner's sister was not called to testify in the first part of the hearings, the decision not to call her was not unwarranted, in light of the testimony that was elicited.  Therefore, the costs related to the travel of the defendant's sister were warranted, and are properly awarded as part of the costs associated with this case.

During the first part of the trial (which was held in June) Petitioner's sister shared a hotel room with his daughter, Rebecca, thereby reducing their individual costs.  The Court notes that Rebecca testified at the June portion of the trial, as well as in rebuttal during the July continuation of the trial.[1]  Rebecca's testimony was relevant to matters in issue before the Court, in particular, the issue of the alleged grave risk of harm to the minor child if he were returned to Petitioner.  The Court **FINDS** that Rebecca's costs are also fully compensable.

Therefore, the Court **OVERRULES** Respondent's objection to the costs associated with the travel to the trial of Petitioner's sister and daughter and will allow the costs sought for their presence in the United States at this trial.

---

[1]Petitioner's sister did not return to the United States for the July portion of the trial.

### 8. Need for a Swedish Language Interpreter.

Respondent asserts that there was no need for a Swedish language interpreter during the hearing and that those costs should not be assessed against her.  In this case, although Petitioner and his daughter both spoke English, their level of comfort with the language and with the nuances of English is such that the use of an interpreter was both helpful to them as well as to the Court.  Therefore, the Court finds that Petitioner's counsel's decision to employ the services of an interpreter for the hearings in this case when the Petitioner and his daughter were expected to testify was warranted

Moreover, the Court is aware that fees for interpreters have previously been reimbursed in at least one prior Hague Convention case.  *See Sanchez v. Cano*, 2010 WL 275148, No. 09-61376-CIV, (S.D.Fla. 2010). Although not used during the July portion of the hearings in this case, , the Court **FINDS** that the presence of the Interpreter was warranted at that part of the trial as well, and her costs are, therefore, reimbursable. Respondent's objection on this ground is **OVERRULED.**

### C.    RESPONDENT'S FINANCIAL STATUS

The purpose of the ICARA provisions for an award of attorneys fees and costs is to place the parties in the condition in which they were before the wrongful removal of the minor child, and to provide a deterrence against future similar conduct. Respondent asserts that her financial status is such that she cannot be expected to pay for fees and costs related to this case.  She has provided an affidavit, which establishes that she has a large amount of debt, is facing high costs in Sweden related to an ongoing child custody action over the minor child which is before the Swedish Family Court, and that she has a net monthly income of $3,300.

A respondent's financial situation may be so dire as to require reduction in the reimbursement of legal fees.  "Because of [respondent]'s strained financial circumstances, however, we find the award of fees and legal costs to [petitioner] so excessive as to constitute an abuse of discretion.  An award of $10,000, rather than $18,487.42, is more equitable in this particular case."  *Ryder v. Ryder*, 49 F.3d 369, 373-74 (8th Cir. 1995).  *See also In re Polson*, 578 F.Supp.2d. 1064, 1072 (S.D.Ill. 2008) (expenses were not reimbursed because of disparity of resources).

Both parties are physicians, and both are, as of the time of this Order, employed. As noted previously, the Respondent has a substantial future income potential.  Although her current financial status is not healthy, there is not a disparity of resources between the parties. Petitioner's supplement establishes that Respondent most recently advised Petitioner that once her fellowship concludes, she will be earning in excess of $300,000 a year.  The Court also notes that Respondent, on the day she boarded the airplane to the United States with the minor child, transferred in excess of $40,000 from the parties' joint account (which was intended for the child) to her personal account.

Although Respondent does not have unlimited resources at this time from which to pay for the costs and fees related to this case, she has a great earning potential,  and an ability to pay reasonable costs and fees in this case.  Respondent's objection to her obligation to pay reasonable fees and costs based upon her financial status is **OVERRULED.**

## CONCLUSION

Therefore, for the above reasons, the Court **GRANTS**  in part and **DENIES**  in part Petitioner's motion for the award of fees and costs.  As previously noted, the language of

ICARA is mandatory. The prevailing party is *entitled* to costs, including, inter alia, attorneys fees, and, under the Hague Convention and ICARA, the Court *shall* order that those costs and fees be paid.   The Court finds that it is appropriate to balance both the fees and costs sought for reasonableness as follows:

1.     The Court has noted some obvious overlap in the time charged for review of emails and similar activities.  Therefore, the Court **FINDS** that it is appropriate to reduce the total time billed by 20%, to eliminate duplication for Ms. Dale and Ms. Bates.  All other fees will be allowed for the time charged.

2.     The Court will allow attorneys fees at the rate of $300 per hour, based on the appropriate local rate, and paralegal fees at the billed rate of $125.00 per hour.

3.     The Court will not award fees or costs related to Dr. Verkander, and the award will be reduced by that amount.

4.     The Court will award costs related to the travel of the Petitioner's daughter and sister.

5.     The Court will award costs for the interpreter for both the June and July hearing dates.

6.     The Court takes note, with approval, of the number of hours not billed by Petitioner's counsel's firm.

The Court, **THEREFORE AWARDS**,  the following:

**Legal Fees**:

| Ms. Dale: | | |
|---|---|---|
| | April: | .75 |
| | May: | 43.75 |
| | June: | 136.00 |
| | July: | 47.25 |
| | Total: | 227.75 |
| | Reduced by 20%: | 182.20 |
| | **At $300/hour:** | **$54,660** |

| Ms. Bates: | | |
|---|---|---|
| | April: | 2.0 |
| | May: | 16.25 |
| | June: | 124.50 |
| | July: | 48.23 |
| | Total: | 190.98 |
| | Reduced by 20%: | 152.78 |
| | **At $125.00/hour:** | **$19,098** |

**Other Legal Fees**:

| April: | Ms. Green | .25 x $300 | 75.00 |
|---|---|---|---|
| | Ms. Myres | .5  x $300 | 150.00 |
| May: | Ms Benzenhoefer | | |
| | | 10  x $175 | 1,750.00 |
| | Ms. Green | .5  x $300 | 150.00 |
| June: | Ms. Khoury | .25 x $200 | 50.00 |
| | Ms. Benzenhoefer | | |
| | | 1.25 x  $175 | 218.75 |
| | Ms. Green | 2.25 x  $300 | 675.00 |
| | Ms. Myres | 1.50 x $300 | 450.00 |
| July: | Ms. Green | 1.00 x $300 | 300.00 |

| **TOTAL:** | | **$3,818.75** |
|---|---|---|

| **Costs**: (Less Dr. Verkander): | **$ 57,367.74** |
|---|---|
| **Additional Costs**: | **$ 15,625.51** |

| **TOTAL COSTS AND FEES AWARDED:** | **$150,570.00** |
|---|---|

22

Respondent shall be responsible for the **IMMEDIATE** payment of costs and fees as

Ordered.


**IT IS SO ORDERED:**

**DATE:   17   November, 2010**

                                   **s/ WILLIAM D. STIEHL**
                                      **DISTRICT JUDGE**